# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRANDY M. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-13-296-RAW-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Brandy M. Smith requests judicial review of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g). She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") committed error in determining that she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on July 29, 1978, and was thirty-three years old at the time of the most recent administrative hearing (Tr. 123, 529). She has a GED and has worked as a nurse's assistant, correctional officer, and stock clerk (Tr. 516). The claimant alleges she has been unable to work since January 3, 2006, because of bipolar disorder and depression (Tr. 142).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 21, 2007. Her applications were denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 18, 2010 (Tr. 549-560). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-10-270-SPS and remanded to the ALJ with instructions to consider the "other source" opinion of Ms. Tommie Smith (Tr. 571-581). ALJ Doug Gabbard, II, conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated July 20, 2012 (Tr. 501-518). The Appeals Council denied review, so ALJ Gabbard's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry/push/pull up to 10 pounds frequently and twenty pounds occasionally, and stand/walk/sit for at least six hours in an eight-hour workday, but could perform only unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct and concrete; interpersonal contact is incidental to the work performed; and no contact with the general public. Additionally, the ALJ found that the claimant could perform no overhead reaching with her right arm and must have the ability to sit and stand throughout the workday (Tr. 505). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national and regional economy, *i. e.*, silver wrapper, photo copier and machine operator, and collater operator (Tr. 517).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly question the vocational expert ("VE") as to the claimant's need for a sit/stand option, and (ii) by failing to identify how much time was needed in the sit/stand option. Because the ALJ *did fail* to properly identify the amount of time needed to sit and to stand, the decision of the Commissioner should be reversed and the case remanded for further proceedings.

On remand, the ALJ extensively summarized the claimant's testimony from the first administrative hearing, as well as the medical evidence of record. The ALJ determined that the claimant had the severe impairments of obesity, internal derangement of the right shoulder status post surgery, and affective disorder (Tr. 503). As directed by this Court, he evaluated the "other source" opinion of Tommie Smith according to the factors set forth in 20 C.F.R. § 416.927(d) and Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006) (Tr. 514-515). Ms. Smith wrote that the claimant was diagnosed with major depressive disorder and generalized anxiety disorder, and that the claimant deals with her anxiety and stress through self-mutilation (Tr. 483). Ms. Smith further noted that claimant's moods are "dramatic and unpredictable[,]" and that she has feelings of worthlessness and "recurring feelings of suicidal thoughts" (Tr. 483). She also wrote that the claimant's medications cause her to experience excessive sleepiness and that her impairment "hinders her ability to function in a social setting and or interactions with others" (Tr. 483). The ALJ gave her opinion "little, if any, weight," because the treatment notes were "vague" and "unrevealing," they appeared to have a limited relationship, and it was unclear what, if any, testing Ms. Smith performed. Additionally, he noted that her notes were inconsistent with treating physician Dr. Everett Bayne's notes (Tr. 515).

The claimant did not appear to testify at the second administrative hearing, and her attorney stated that his "suspicion is that she's just terrified at home" (Tr. 531). The ALJ and her attorney proceeded with the hearing, and the ALJ called on vocational expert

(VE) Suzette Skinner to testify. The ALJ discussed the claimant's past relevant work with the VE, then asked the following hypothetical:

> [L]et me have you assume that we have a person who is the same age, education, and work experience as Ms. Smith. . . . [A]ssume that this hypothetical person can perform light, unskilled work—and by unskilled I mean work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The supervision has to be simple, direct, and concrete. Interpersonal contact with coworkers has to be incidental to the work performed, like assembly work, and she has to have no dealings with the general public. And in addition, she has to have the ability to alternately sit or stand throughout the work day, and she must not be required to do any overhead reaching with her right arm.

(Tr. 539). The VE responded that such a person could not perform the claimant's past relevant work, but that she could do the jobs of silver wrapper, photo copier and machine operator, and collater operator (Tr. 540). There was no further discussion of the sit/stand requirement for this hypothetical, and the ALJ ultimately adopted this RFC and found the claimant could perform these jobs (Tr. 505, 517).

ALJ Gabbard noted in his written opinion that the claimant was treated in 2005 for right knee pain, low back pain due to end plate spurring of several levels of the thoracic spine, sacroiliac joint pain with pain radiating into the left leg, deep vein thrombosis of the right leg in 2008 (with negative ultrasound evidence of continued DVT in 2011), wearing a soft case on her left leg in April 2012 following a motor vehicle accident (Tr. 507-513). He noted state agency physicians had recommended medium work, but reduced that to "light work with no overhead reaching with the right arm and the ability to alternately sit and stand throughout the workday" (Tr. 514). He then determined that the claimant was not disabled.

Residual functional capacity is defined by the Social Security Regulations as what a claimant is capable of doing despite her mental and physical limitations. *Davidson v. Secretary of Health & Human Services*, 912 F.2d 1246, 1253 (10th Cir. 1990). RFC categories have been established based on the physical demands of various kinds of work in the national economy. 20 C.F.R. § 404.1567. RFC is a medical assessment based primarily on medical findings such as symptoms, signs, and laboratory results. Additionally, medical and non-medical sources also must be considered in determining the RFC. 20 C.F.R. § 404.1545(a). When the ALJ is assessing the RFC, he "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i. e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In this case, the ALJ found that any work the claimant could perform given her physical limitations would require the claimant to "alternately sit and stand throughout the workday" (Tr. 505), but he did not specify the parameters of the sit/stand option. The claimant argues that this was error under Soc. Sec. R. 96-9p, 1996 WL 374185, at *5 (July 2, 1996) ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). Although it is true that Soc. Sec. R. 96-9p applies in the case of *sedentary work*, not *light work*, *see Vititoe v. Colvin*, 549 Fed. Appx. 723, 731 (10th Cir. 2013) ("But SSR 96-9p

applies in cases where the claimant is limited to less than the full range of *sedentary work* and the disability determination is not directed by the Grids. Here the ALJ found that Mr. Vititoe retains the capacity to perform less than the full range of *light work*, so SSR 96-9p is not applicable."), those guidelines are still applicable in this case because "[p]recisely how long a claimant can sit without a change in position is also relevant to assumptions whether [s]he can perform light work." *Vail v. Barnhart*, 84 Fed. Appx. 1, 4 (10th Cir. 2003), *citing* 20 C.F.R. § 404.1567(b). This is consistent with Soc. Sec. Rul. 83-12, which states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.) [ M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.

(Program Policy Statement -103) 1983 WL 31253, at *4.

Here, the ALJ simply stated that the claimant would need to alternate sitting and standing "throughout the day." The Commissioner argues without support that this "has to" mean that the ability to sit and stand is "at will," but the undersigned Magistrate Judge disagrees. *Verstraete v. Astrue*, 2013 WL 238193, at *5 (D. Kan. Jan. 22, 2013)

("[T]he ALJ's RFC findings failed to specifically indicate the frequency of plaintiff's need to alternate sitting and standing. The court will not imply such a finding by the ALJ, especially given that any specific finding by the ALJ would have to be supported by evidence in the record."). *See also Newton v. Colvin*, 2013 WL 6169298, at *3 n.3 (W.D. Okla. Nov. 21, 2013) ("Because the question of how often a claimant can sit without changing positions is equally important when light work is involved, *see* 20 C.F.R. § 404.1567(b), courts have frequently relied on SSR 96-9p when assessing opinions that a claimant cannot perform a full range of light work."), *citing Vail*, 84 F. Appx. at 4-5 *and Verstraete*, 2013 WL 238193, at *3-5. Furthermore, even if the Court could find that the sit/stand option included in the claimant's RFC was intended by the ALJ to be at will, it is unclear whether the VE understood this to be what the ALJ intended, and thus likewise unclear whether the claimant can perform the jobs found by the ALJ given the need to sit or stand at will throughout the workday.

Accordingly, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant RFC, in particular her limitations related to the frequency needed for a sit/stand option. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**